IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

                Plaintiff,

vs.                                        No. 1:19-cr-03113-JB

TOMAS SANCHEZ,

                Defendant.

## MOTION TO REVOKE ORDER OF DETENTION PENDING TRIAL

Tomas Sanchez, by counsel, The Law Office of Ryan J. Villa, by Ryan J. Villa, pursuant to 18 U.S.C. § 3145(b) respectfully requests the Court revoke U.S. Magistrate Judge Mozlen's Order [Doc. 126] detaining Mr. Sanchez pending trial and release him on conditions to a third-party custodian under the supervision Pretrial Services.

## BACKGROUND

Following review of Mr. Sanchez's Motion for Review of Detention Order and Renewed Motion for Immediate Release [Doc. 197] Judge Molzen entered a Memorandum Opinion and Order denying the Motion on June 29, 2020. *See* Order [Doc. 230]. As Judge Molzen's Order explains, at Mr. Sanchez's initial detention hearing in September of last year, both the court and probation determined that despite the rebuttable presumption of detention, conditions of release could be fashioned to assure Mr. Sanchez's appearance at trial and assure the safety of the community. *See* MOO at 1-2 (citing 18 U.S.C. § 3142(e)(3)(A)).

Mr. Sanchez was later found to have violated a condition of release for communicating with Co-Defendant Robert Padilla via phone and was remanded into custody on October 31, 2019. *Id.* at 2.  While this was no doubt a serious violation of his conditions of release, the evidence at

1

the October 31 hearing revealed that Mr. Sanchez did not plan or set out to communicate with Mr. Padilla. Instead it appears Mr. Sanchez happened to be with Mr. Padilla's then girlfriend, when Mr. Padilla called her from the detention facility where he was being held and asked to speak to Mr. Sanchez.  Though Mr. Sanchez should have declined the invitation to speak to Mr. Padilla, this spontaneous situation is much different than if Mr. Sanchez conspired with Mr. Padilla to arrange the phone call.  In any case, Mr. Sanchez does not contest the validity of his remand for this conduct, but instead points out that he has since served over eight months for the violation. This fact should be considered by the Court in determining whether to release Mr. Sanchez on conditions now.  To be sure, this eight months plus detention has taught Mr. Sanchez the consequences of violating the Court's conditions of release and serves as a deterrent to any future violations.

Furthermore, the reasons for his release back in September of 2019 still strongly dictate that there are conditions of release that can be fashioned, which overcome the presumption of detention.  Mr. Sanchez is the sole caretaker and parent to his 9-year-old son.  The mother of his son died tragically of an overdose. The government wrongly blames Mr. Sanchez for her death based on an intercepted phone call in which it is alleged that a grieving Mr. Sanchez questions whether he might be responsible.  However, there is no evidence that he is.  Allegedly, he simply questioned it himself while talking about her death on an intercepted call. Aside from this alleged call, there is no evidence that Mr. Sanchez is responsible or that his alleged drug trafficking supplied the decedent with the drugs she took that led to her overdose. Regardless, since her passing, Mr. Sanchez has been the sole caretaker for his young son. As a result of Mr. Sanchez's incarceration, his son has lived with Mr. Sanchez's sister. However, like all children that age, he

needs his father.  His son has struggled without his father and due to the tragic loss of his mother, has required counseling and extensive emotional support.

In addition, to Mr. Sanchez's family circumstances, the facts of the instant case and the charges do not support detention.  Although charged with a crime that carries the rebuttable presumption of detention, Mr. Sanchez's three counts are all charged pursuant to 21 U.S.C. 841(b)(1)(C), meaning there is no mandatory minimum, and the maximum possible sentence is 20 years.  Because his criminal history is minimal, it also appears that even if convicted, Mr. Sanchez is eligible for the safety valve pursuant to 18 U.S.C. § 3553(f).  Even if the allegations are true, Mr. Sanchez's role in the alleged drug conspiracy was minor at best.  Thus, he is not facing a substantial guideline sentence that might suggest he is more likely to flee or continue violating his conditions of release if released by this Court.

What is more, the weight of evidence against Mr. Sanchez favors release.  He is charged in the primary conspiracy charge, Count 1, for allegedly conspiring to sell cocaine and fentanyl, but he is not accused of selling other drugs that some co-conspirators are alleged to have distributed, including crack, methamphetamine and heroin.  *See* Indictment at 1-5 [Doc. 2].  He is also charged in two rather curious possession with intent to distribute counts, in Counts 6 and 7, which accuse him of possession with intent to distribute fentanyl and cocaine from October 17, 2018 through November 8, 2018, respectively.  *See Id.* at 6-7.  These counts are curious in that Mr. Sanchez was never found to be in possession of either substance. It is assumed all three counts are based on intercepted phone calls in which code was alleged to be used for the two drugs at issue. There is no other evidence that corroborates that Mr. Sanchez indeed possessed these two substances with intent to distribute them, outside of alleged intercepted phone calls. Lacking any

3

other evidence to support these counts, the Court should consider the weight of the evidence against Mr. Sanchez to be light.

Further, unlike many accused of drug crimes that come before this Court, Mr. Sanchez had gainful employment before his indictment in this case. He worked for an insurance company for nine months before his arrest. Although he suffers from a variety of health conditions, Mr. Sanchez believes he can become reemployed upon release. If released Mr. Sanchez has several family members in Albuquerque, including his mother and sister. His sister who was previously assigned to be his third-party custodian, and who has custody of his son, continues to be willing to be a third-party custodian for Mr. Sanchez. All of his ties are to the State of New Mexico making it very unlikely he would flee the jurisdiction and providing him a place to reside where pretrial services can monitor him.

Finally, while the COVID-19 pandemic also presents reasons to release Mr. Sanchez because he has medical conditions that makes him more susceptible to death or hospitalization should he contract the disease,[1] Mr. Sanchez submits that even without the pandemic, release is appropriate given all of the circumstances.

## ARGUMENT

While release was likely not warranted in October 2019 following Mr. Sanchez's violation, now eight months later, the analysis has changed. In her MOO, Judge Molzen was concerned that releasing Mr. Sanchez in October would affect the integrity of the judicial process given his

---

[1] Mr. Sanchez is obese, and research findings published by the Center for Disease Control (CDC) indicates that having obesity (body mass index of 30 or higher) puts individuals at an increased risk of suffering severe illness should they contract COVID-19. *See* Summary of Recent Changes published online at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

violation.  However, now that Mr. Sanchez has remained incarcerated for eight months without incident, release would not impair the integrity of the judicial process because the eight-month incarceration serves as adequate punishment for Mr. Sanchez's violation and a deterrent against future violations.  The remainder of Judge Molzen's MOO dealt with a release analysis based on COVID-19.  *Id.* at 4-6.  As indicated, while COVID-19 is one factor for this Court to consider, Mr. Sanchez is not seeking a temporary release from custody pursuant to 18 U.S.C. § 3142(i) in the instant Motion, but instead a de novo review of his detention pursuant to Section 3145(b).  To be sure, his release will make it less likely that he contracts the virus  than if he continues to be detained in the Cibola County Jail. A recently published study from researchers at John Hopkins and UCLA indicates that prisoners, like Mr. Sanchez, are 550 percent more likely to contract COVID-19 and 300 percent more likely to die of COVID-19 related complications than non-incarcerated members of the U.S. population.[2]

In reviewing a magistrate's order pursuant to Section 3145(b), the District Court conducts a de novo review of the facts with no deference to the magistrate judge's findings. *See United States v. Koening*, 912 F.2d 1190 (9th Cir. 1990). In performing this review, the Court may, in its discretion, rely upon the record developed before the magistrate or conduct additional evidentiary hearings. *See id*.  The Bail Reform Act requires that the Court "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2nd Cir. 1987) (quoting S. Rep. No. 98-225 at 7, as reprinted in 1984 U.S.C.C.A.N.

---

[2] *See* Saloner B, Parish K, Ward JA, DiLaura G, Dolovich S. COVID-19 Cases and Deaths in Federal and State Prisons. JAMA. Published online July 08, 2020. doi:10.1001/jama.2020.12528, available at https://jamanetwork.com/journals/jama/fullarticle/2768249; also reported on by Alexandra Sternlicht, Forbes Business available at https://www.forbes.com/sites/alexandrasternlicht/2020/07/08/prisoners-550-more-likely-to-get-covid-19-300-more-likely-to-die-new-study-shows/#749f4bf43a72

3182, 3189); *see United States v. Salerno*, 481 U.S. 739, 755 (1987) (suggesting that "detention prior to trial or without trial is the carefully limited exception" to liberty before trial). One charged with a crime is, after all, presumed innocent. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). A single individual unnecessarily detained before trial is one individual too many, and the increasing use of the practice places tremendous wear on our constitutional system. *United States v. Montalvo-Murillo*, 495 U.S. 711, 723–24 (1990) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). Due to the crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. *See United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating the propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), *cert. dismissed sub nom.*, *Melendez-Carrion v. United States*, 479 U.S. 978 (1986).

**Mr. Sanchez has already rebutted the presumption of detention**

Mr. Sanchez rebutted the presumption and was placed on conditions in October of 2019. This was because he has a very minimal criminal history with no felony arrests or convictions, was the sole caretaker for his 9-year-old son, was employed, had local ties, the weight of the evidence against him was minimal, and he is considered to have a smaller alleged role in the alleged criminal conspiracy. These facts support that there are conditions that can reasonably assure his appearance in court and the safety of the community. *See* 18 U.S.C. § 3142(g) (identifying factors the court should take into account). However, once he violated his conditions, remand was ordered. Mr. Sanchez now submits he has rebutted the presumption notwithstanding his violation, and established that conditions exist as contemplated by Section 3142(g), because of his eight-month incarceration that resulted from his violation. Our criminal justice system is

premised, at least in part, on the notion that incarcerating individuals for violating the law teaches them not to do it again and deters others who may consider doing the same.  Accordingly, the Court should consider the deterrent effect Mr. Sanchez's incarceration has had on him.  This is a fact that was obviously not present at the time of his October remand.

Moreover, like before his violation, there are conditions that the Court can impose to ensure Mr. Sanchez's appearance in Court and the safety of the community.  As noted, Mr. Sanchez's sister can be his third-party custodian and will allow him to reside with her.  Mr. Sanchez  can also be placed on electronic monitoring as an additional layer of protection. Further, he can be supervised by Pretrial Services, who can ensure that he is working or actively seeking work, undergoing counseling and treatment, and complying with his conditions of release.

**The Court should consider the likely length of delay until trial that Mr. Sanchez faces if he remains in detention due to the complex nature of this case and the pandemic**

As discussed, Mr. Sanchez has been in custody on this case since October of 2019.  Thus, if kept in custody until the current trial date, Mr. Sanchez will spend more than a year and a half in pretrial detention.  Because of the pandemic, trials have not occurred since early March.  This means there is likely a growing backlog of trials that will create a ripple effect for months if not years on future trial dates.  It is difficult to see how the current trial date is likely to be the true trial date given the current freeze on jury trials, the increase in positive COVID-19 cases, and the uncertainty of when trials will resume.  Further, because Mr. Sanchez had to obtain new counsel through no fault of his own, he will likely have to seek extensions of time from deadlines in the Court's current Scheduling Order, which will also cause the trial date to be moved.

This long period of detention implicates his due process rights and his right to a speedy trial.

7

> A defendant who is required to wait long periods to be tried suffers from a magnitude of disabilities which in no way contribute to his well being. If he is incarcerated awaiting trial, unnecessary delay in the commencement of the trial could result in irreparable injury to an innocent individual. To one who is ultimately found guilty of a criminal offense, the time spent in detention may represent added time to his ultimate sentence and further retard the rehabilitative process."

*United States v. Theron*, 782 F.2d 1510, 1513 (10th Cir. 1986) (quoting H.R.Rep. No. 1508, 93d Cong., 2d Sess. 4, reprinted in 1974 U.S.Code Cong. & Ad.News, 7401, 7407-08) (Speedy Trial Act legislative history); *id. at* 1516-17 (holding due process required that an incarcerated defendant be released or tried within 30 days when, *inter alia*, delay of trial occurred due to co-defendants).

*United States v. Margheim*, 770 F.3d 1312, 1326 (10th Cir. 2014) ("Our court has recognized that '[d]elays approaching one year generally satisfy the requirement of presumptive prejudice[]'" for purposes of speedy trial) (quoting *United States v. Batie,* 433 F.3d 1287, 1290 (10th Cir. 2006)); *id.* at 1329 ("prolonged pretrial incarceration is a well-established type of prejudice that a defendant may rely upon in making a Sixth Amendment speedy trial claim") (quoted authority omitted).

While Mr. Sanchez desires a speedy trial, he also recognizes that there is a large amount of discovery that needs to be reviewed before trial, the defense needs to conduct its own investigation, and there are motions that need to be litigated prior to trial.  In addition, he recognizes the trial may be delayed either to permit his newly assigned counsel more time or due to the backlog that will be inevitably created by the pandemic.  In either case, he should not have to suffer in pretrial detention when there are conditions of release that can ensure  compliance.  Here the long delay should be analyzed both to find that Mr. Sanchez has overcome the presumption of detention and that there are conditions of release the Court can impose to assure Mr. Sanchez's appearance at trial and the safety of the community

8

The United States opposes this Motion.

Respectfully submitted,
The Law Office of Ryan J. Villa

By:   /s/ Ryan J. Villa
      RYAN J. VILLA
      2501 Rio Grande Blvd. NW Ste A
      Albuquerque, New Mexico  87104
      (505) 639-5709
      (505) 433-5812 (fax)
      ryan@rjvlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2020, I filed the foregoing electronically through the CM/ECF system, which caused counsel for the United States to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Ryan J. Villa*
RYAN J. VILLA